**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

CURLAN MCCRAY, JR. PLAINTIFF

V. 5:08CV00104 JTR

MIKE HURST, Chief,
W. C. Brassell Detention Center, et al. DEFENDANTS

**MEMORANDUM OPINION**[1]

**I. Introduction**

Plaintiff, who is currently confined at the West Tennessee Detention Facility, has commenced this *pro se* § 1983 action alleging that Defendants violated his constitutional rights while he was detained at the Brassell Detention Center ("BDC") in Arkansas. Specifically, Plaintiff alleges that Defendants: (1) failed to use adequate measures to prevent him from contracting TB, Hepatitis, or any other contagious disease; and (2) exposed him to a detainee who was HIV positive. *See* docket entries #2 and #8.

Defendants have filed a Motion for Summary Judgment, a Supporting Brief, and a Statement of Undisputed Material Facts. *See* docket entries #40, #41, and #42. Plaintiff has filed a Response, a Statement of Disputed Material Facts, and his Affidavit. *See* docket entries #61, #62, and #63. Thus, the issues are joined and ready for disposition.

---

[1] On October 17, 2008, the parties consented to proceed before a United States Magistrate Judge. *See* docket entry #19.

## II. Discussion

### A. Review of Relevant Facts[2]

Plaintiff arrived at the BDC on February 22, 2008. *See* docket entries #41 at Ex. B, #42, #62, and #63. Contrary to a BDC policy, Plaintiff was not tested for TB within fourteen days of his arrival because the facility ran out of the necessary testing supplies. *Id.* Approximately five months later, on July 29, 2008, Plaintiff was tested for TB and the results were *negative*. *Id.*

The parties agree that the BDC uses an ultraviolet air filter that "turns the entire volume of air over" in each pod. *See* docket entry #42 at ¶ 20.

In her sworn affidavit, Defendant Nurse Angela Randle asserts that the BDC "employs on a regular basis the necessary chemicals to prevent TB, Hepatitis, and staff infections." *See* docket entry #41, Ex. B at ¶ 18. However, Plaintiff avers in his sworn affidavit that chemicals are used to clean the day rooms only, and that the cells are cleaned by the detainees without the use of *any* chemicals. *See* docket entry #63 at ¶¶ 17 through 19.

On March 24, 2008, detainee Rauls, who was housed in the same pod with Plaintiff, reported to Defendant Randle that his girlfriend was HIV positive. *See* docket entries #41at Ex. B, #42, #62, and #63. Defendant Randle made several phone calls to Rauls's girlfriend in an attempt to confirm her HIV status. *Id.* Meanwhile, on April 3, 2009, Rauls scratched Plaintiff while they were playing basketball, causing *Plaintiff* –not Rauls – to bleed.[3] *Id.* The next day, on April 4, 2009, Plaintiff

---

[2] Unless otherwise stated, the relevant facts are undisputed.

[3] Defendants are unclear as to when Plaintiff was scratched by Rauls, and when Rauls was removed from the pod and placed in isolation. *See* docket entries #41 at Ex. B and #42. In contrast, Plaintiff contends that he was scratched on April 3, 2008, and that Rauls was placed in isolation on April 4, 2008. *See* docket entries #61 and #62. For purposes of resolving the pending Motion, the Court has construed these facts in the light most favorable to Plaintiff.

saw Rauls bleeding from his right thumb while they were playing basketball. *See* docket entry #61. Plaintiff also alleges that his hair was cut with the same instruments used on Rauls. *Id.* However, Plaintiff *does not* contend that he ever came into contact with Rauls's blood or bodily fluids.[4]

Thereafter, Rauls's girlfriend confirmed that she was HIV positive. *See* docket entry #41 at Ex. B. Rauls was immediately removed from the pod and placed in isolation, while Defendant Randle made arrangements for him to be tested for HIV. *Id.* On April 21, 2008, Rauls was taken to the Jefferson Comprehensive Care Center where he tested *negative* for HIV.[5] *Id.*

On January 20, 2009, Plaintiff was released from the BDC. *See* docket entry #41 at Ex. A. Importantly, Plaintiff does *not* contend that he has HIV, TB, Hepatitis, or any other contagious disease.

---

[4] According to the Centers for Disease Control and Prevention, "HIV transmission can occur when blood, semen, pre-seminal fluid, vaginal fluid, or breast milk from an infected person enters the body of an uninfected person." *See* www.cdc.gov/hiv/resources/qa/qa16.htm.

[5] Plaintiff takes issue with the fact that Defendants have not provided him with a copy of Rauls's HIV test. *See* docket entry #62. Defendants explain that they gave Rauls the only written copy of his HIV test, and that he took that document with him when he was released from the BDC. *See* docket entry #42. However, in her sworn affidavit, Defendant Randle avers that Rauls's HIV test result was negative. *See* docket entry #41 at Ex. B. Importantly, Plaintiff has failed to come forward with any evidence to refute that assertion.

**B. Analysis of Plaintiff's Claims**[6]

**1. Failure to Prevent Infection**

First, Plaintiff alleges that Defendants violated his constitutional rights when they failed to take adequate measures to ensure that he did not contract TB, Hepatitis, or any other contagious disease. Specifically, he alleges that Defendants: (1) failed to comply with their own policy requiring that he be tested for TB within fourteen days of arriving at the BDC; (2) did not adequately screen incoming detainees for contagious diseases; and (3) failed to properly disinfect the cells.

In order to establish an unconstitutional conditions of confinement claim, a prisoner or detainee must demonstrate that: (1) objectively, there was a substantial risk of serious harm; and (2) subjectively, defendants actually knew of but deliberately disregarded that substantial risk of harm. *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)); *Massik v. N. Cent. Corr. Facility*, 136 F.3d 580, 581 (8th Cir. 1998).

As to the objective component, it is undisputed that Plaintiff did *not* contract HIV, Hepatits, TB, or any other contagious disease while he was being held in the BDC.[7] Additionally, he does *not*

[6] It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex*, 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file" that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

[7] Because Plaintiff was not physically harmed, he cannot recover any compensatory damages. *See* 42 U.S.C. § 1997e(e); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (explaining that the Prison Litigation Reform Act bars recovery of compensatory damages absent a physical injury). Furthermore, any request for injunctive relief is now moot because Plaintiff is no longer confined in the BDC. *Owens v. Isaac*, 487 F.3d 561, 564 (8th Cir. 2007); *Smith v. Hundley;* 190 F.3d 852, 855

contend that he was housed with or near any detainee who had a contagious disease. Thus, he has failed to create a genuine issue of fact as to whether he was exposed to a substantial risk of harm of contracting a contagious disease while confined at the BDC. *See Butler*, 465 F.3d at 345 (explaining that the "objective component requires proof that [the detainee] was exposed to . . . inmates with [a contagious disease] in a manner that created an unreasonable risk of serious harm to his health").[8]

As to the subjective component, it is undisputed that Defendants tried to prevent the spread of contagious diseases at the BDC by: (1) employing an ultraviolet air filter to clean the air; (2) testing detainees for TB within fourteen days of their arrival; and (3) using disinfecting chemicals in at least a portion of the BDC. The fact that Defendants may have negligently failed to maintain sufficient supplies to timely conduct the TB test on Plaintiff does not establish deliberate indifference. *See Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (holding that mere negligence is insufficient to support a conditions of confinement claim under § 1983); *Davis v. Dorsey*, 167 F.3d 411, 412 (8th Cir. 1999) (same). Additionally, Plaintiff has failed to come forward with *any evidence* demonstrating that these measures were insufficient to prevent the spread of

---

(8th Cir. 1999).

[8] In a second-hand smoke case, the Supreme Court clarified that:

> [W]ith respect to the objective factor, determining whether [the prisoner's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36 (emphasis in the original).

contagious disease at the BDC. Thus, there is no evidence that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff. Accordingly, Defendants are entitled to summary judgment on this claim.

**2. Exposure to HIV**

Second, Plaintiff alleges that Defendants violated his constitutional rights when they failed to adequately protect him from exposure to HIV by allowing him to have contact with Rauls. This argument fails for two reasons.

In evaluating the objective component of this conditions of confinement claim, it is *undisputed* that Rauls tested *negative* for HIV. Thus, Plaintiff was never at risk of contracting that disease from Rauls. Furthermore, Plaintiff has not alleged and the facts do *not* establish that Plaintiff ever came into contact with Rauls's blood or bodily fluids. Thus, even if Rauls had been HIV positive, Plaintiff has not demonstrated that he was exposed to a substantial risk of contracting that disease from him. *See Glick v. Henderson*, 855 F.2d 536, 539 (8th Cir. 1988) (affirming the dismissal of a prisoner's § 1983 claim because it was based upon "unsubstantiated fears and ignorance" of how HIV is transmitted).

In considering the subjective component of this conditions of confinement claim, it is *undisputed* that, once Rauls announced that his girlfriend had HIV, Defendant Randle: (1) made several attempts to confirm the girlfriend's HIV status; (2) isolated Rauls from the other detainees once she received such confirmation; and (3) had Rauls tested for HIV. Plaintiff has failed to come forward with *any evidence* suggesting that Defendant Randle was deliberately indifferent to the risk of harm posed by Defendant Rauls's possible HIV status. Thus, Defendants are also entitled to summary judgment on this claim.

## III. Conclusion

IT IS THEREFORE ORDERED THAT:

1. Defendants' Motion for Summary Judgment (docket entry #40) is GRANTED, and this case is DISMISSED, WITH PREJUDICE.

2. The Court CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order of Dismissal and the accompanying Judgment would not be taken in good faith.

Dated this 26th day of June, 2009.

J. Thomas Ray
UNITED STATES MAGISTRATE JUDGE